**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------

**TRANSFIELD ER CAPE LTD.,**

            **Plaintiff,**         09 Civ. 1250 (JGK)

     - against -           **MEMORANDUM OPINION**
                                          **AND ORDER**
**STX PAN OCEAN CO. LTD.,**

            **Defendant.**
-----------------------------------

**JOHN G. KOELTL, District Judge:**

     Defendant STX Pan Ocean Co. Ltd. ("STX") moves pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims to vacate an order of maritime attachment issued by this Court on February 13, 2009. On February 11, 2009, the plaintiff, Transfield ER Cape Ltd. ("Transfield"), filed a verified complaint against STX, alleging a claim for breach of a charter party in the amount of $2,743,269.99, and seeking an ex parte order of attachment in aid of a London arbitration (the "Verified Complaint"). The Court reviewed the Verified Complaint and attorney affidavit and, after determining that the conditions of Supplemental Rule B appeared to exist, entered an order authorizing process of maritime attachment and garnishment against the assets of STX (the "Attachment Order"). On February 24, 2009, Transfield filed an amended verified complaint (the "Amended Verified Complaint") seeking damages in the amount of $4,568,046.96, representing the amount of damages plus

1

attorneys' fees and costs. On the same day, the Court issued an amended order of attachment (the "Amended Attachment Order"). However, due to a clerical error in the application for the attachment, the Amended Attachment Order authorized attachment and garnishment for only $3,395,207.94, corresponding to the amount of damages without attorneys' fees and costs. Transfield has accordingly requested that the Court issue a revised order of attachment for the full $4,568,046.96 requested in its Amended Verified Complaint.

For the reasons discussed below, the defendant's motion to vacate the order of attachment is **granted.** The plaintiff's request to issue an amended order of attachment is **denied as moot.**

**I.**

Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." In order to obtain an attachment, apart from satisfying the filing and service requirements of Rules B and E, the plaintiff bears the burden of showing that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be

2

found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006); Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006). The Court must vacate an attachment if the plaintiff fails to sustain its burden of demonstrating that the requirements of Rules B and E are satisfied. Aqua Stoli, 460 F.3d at 445. In determining whether the plaintiff has met this burden, a district court may consider evidence outside of the pleadings. SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06 Civ. 15375, 2008 WL 4900770, at *1 (S.D.N.Y. Sept. 10, 2008) (citing Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 53 (2d Cir. 2008); Wajilam Exports, 475 F. Supp. 2d at 278-79.

## II.

In the Amended Verified Complaint, Transfield asserts the following facts. Transfield is a foreign business entity organized under the laws of the British Virgin Islands. (Am. Compl. ¶ 2.) STX is a foreign business entity with its principal place of business in Seoul, Korea. (Am. Compl. ¶ 3.)

On or about October 18, 2007, Transfield entered into a charter party agreement with STX to charter the M/V Heng Shan to STX (the "Agreement"). (Am. Compl. ¶ 4.) Under the Agreement, the parties agreed to the arbitration of disputes arising out of

the Agreement in London with English law to apply.  (Am. Compl. ¶ 6.)  On February 4, 2009, STX's thirty-third hire payment of $2,015.073.21 became due and payable to Transfield, but STX failed to remit any payment.  (Am. Compl. ¶ 8.)  On February 20, 2009, STX's thirty-fourth hire payment became due and payable.  (Am. Compl. ¶ 9.)  STX remitted partial payment of $633,563.86, leaving an outstanding balance of $1,380,134.73.  (Am. Compl. ¶ 9.)  Together with the outstanding balance from the unpaid thirty-third hire payment, STX failed to pay a total of $3,395,207.94 to Transfield.  (Am. Compl. ¶ 10.)

STX readily concedes that it did not pay the alleged amounts to Transfield and that it therefore owes those amounts to Transfield.  In an attorney affidavit submitted in connection with its motion to vacate, however, STX explains that it did not remit payment to Transfield in order to comply with a Korean court order which prohibited it from making those payments to Transfield.  On or about January 29, 2009, a creditor of Transfield, Hanjin Shipping Co., Ltd. ("Hanjin"), obtained a provisional attachment order from the Seoul Central District Court (the "Korean Attachment Order").  (Magali Decl. ¶ 4.)  The Korean Attachment Order lists Transfield as the "Debtor" and STX as the "3rd Debtor," and states that "[i]t is not allowed for the third debtor to pay the above debts to the debtor."  (Magali Decl. Ex. C.)  The claimed amount of the debt is listed as

4

$3,395,216, (Magali Decl. Ex. C), which is roughly the same amount that STX failed to pay Transfield on the thirty-third and thirty-fourth hire payments. The Korean Attachment Order specifically allowed Transfield to apply for suspension of the execution or its cancellation by placing $3,395,216 in escrow. (Magali Decl. Ex. C.)

STX attaches emails showing that it advised Transfield on both February 4 and 6 that it had received the Korean Attachment Order and informing Transfield that the Korean Attachment Order prohibited any payment by STX to Transfield of up to $3,395,216. (See Magali Decl. Ex. D.) On February 6, STX also offered to enter into a three-way escrow agreement with Transfield and Hanjin, pursuant to which STX would pay into the escrow account the $2,015,073.21 due on the thirty-third hire payment, but Transfield rejected that offer. (Magali Decl. ¶¶ 7-8.) Transfield did not mention the existence of the Korean Attachment Order or STX's offer to enter into an escrow agreement in any of its papers at the time it filed its Verified Complaint on February 11, 2009, or at the time it filed its Amended Verified Complaint on February 24, 2009.

### III.

Defendant STX moves to vacate the order of attachment on three alternative grounds. First, STX argues that the Transfield has no valid prima facie admiralty claim against it

because STX was barred by a court order from making the hire payments at issue to Transfield. Second, it urges that the attachment be vacated for equitable reasons. Third, it asks the Court to exercise its discretion to vacate the attachment in the interest of international comity.

**A.**

STX first argues that Transfield does not have a valid prima facie maritime claim against STX, reasoning that because STX was prohibited by a court order from making the said hire payments to Transfield, those funds are not "due and owing" to Transfield. In support of this position, STX cites Lowenschuss v. Kane, 520 F.2d 255, 265 (2d Cir. 1975), which holds that impossibility caused by a judicial order prohibiting performance on a contract can excuse a party's performance if the fault of the party owing the performance did not contribute to the judicial order. Transfield does not clearly respond to this argument, other than to point out that it is undisputed that STX owes hire payments to Transfield, and that the Korean Attachment Order did not resolve that dispute.

Nevertheless, Transfield does state a valid prima facie maritime claim. Impossibility is a defense to a breach of contract claim, not an argument going to an element of a prima facie claim. See, e.g., id. at 265; Kama Rippa Music, Inc. v. Schekeryk, 510 F.2d 837, 842 (2d Cir. 1975). Moreover, "[t]he

6

party pleading impossibility as a defense must demonstrate that it took virtually every action within its powers to perform its duties under the contract." Id.  As the Court of Appeals has instructed, "[i]n all but the clearest cases this will involve issues of fact that must be resolved by the district court only after the parties have had adequate opportunity to investigate and present their evidence." Lowenschuss, 520 F.2d at 265-66. While STX may ultimately prove that it exhausted its attempts to perform on the Agreement before failing to pay, it is nonetheless undisputed that STX owed monies to Transfield, and that STX did not pay.  At this stage, this is sufficient to establish a valid prima facie claim.

**B.**

Although STX's arguments do not defeat Transfield's prima facie claim, they do present compelling reasons to vacate the attachment on equitable grounds.  STX argues that it would be inequitable to maintain the attachment when Transfield failed to disclose the existence of the Korean Attachment Order, Transfield's own conduct brought the Korean Attachment Order upon itself, and STX did not make the hire payments because it wanted in good faith to comply with the Korean Attachment Order. STX also argues that equitable vacatur is appropriate because STX offered Transfield the security it seeks through the Rule B attachment, while protecting itself against any claims from

7

Hanjin, but Transfield refused the offer. Lastly, STX points out that Transfield could obtain in personam jurisdiction over STX in Korea and argues that this is a further basis for equitable vacatur. Transfield does not really respond to any of these arguments and instead relies on the argument that because nothing in the Korean Attachment Order precludes it from seeking a Rule B attachment, it is entitled to the attachment so long as it can satisfy the requirements of Rules B and E.

However, Transfield's argument misses the point that an attachment that complies with Rule B may nonetheless be vacated on equitable grounds, albeit under limited circumstances. See Aqua Stoli, 460 F.3d at 444. Although the Court of Appeals declined in Aqua Stoli to define the exact scope of a district court's equitable power to vacate an otherwise proper attachment, it did specify at least three situations in which a district court may do so: if "1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." Id. at 445. The Court of Appeals further explained the second category: "A maritime attachment would likewise be properly vacated if the plaintiff and defendant are both present in the same district and would be

8

subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets." Id. at 444-45.

Here, STX submits that both Transfield and STX are present in the jurisdiction of the Seoul Central District Court. STX has its principal place of business in Seoul, Korea. STX also represents that Transfield has appeared in the Seoul Central District Court to litigate its dispute with Hanjin, and Transfield did not contest that allegation in its papers or at oral argument. (Def.'s Am. Mem. 8, 10.) This case thus falls squarely into the second category of cases described in Aqua Stoli in which equitable vacatur is proper. See also OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd., No. 06 Civ. 9441, 2007 WL 1834711, at *7 (S.D.N.Y. Jun. 26, 2007) (finding equitable vacatur to be appropriate where both plaintiff and defendant were present in Kolkata, India, during previous arrest proceedings).

Because this ground alone is sufficient to warrant vacatur, the Court need not address whether STX's remaining arguments, namely, that Transfield's wrongful conduct in failing to disclose the Korean Attachment Order and that its own reasonable conduct merit vacatur, and that it had already offered Transfield security for the underlying claim which Transfield then rejected, would constitute those "certain limited circumstances" in which an attachment meeting the requirements

of Rule B may be vacated.  See Aqua Stoli, 460 F.3d at 444.  The Court does note, however, that although Transfield's counsel may not have been made aware by its client of the Korean Attachment Order, Transfield's failure to bring this to the Court's attention when it sought the first attachment on February 11, 2009, and when it sought the amended attachment on February 24, 2009, is a matter of concern.  In ex parte proceedings such as Rule B attachments, parties have a heightened obligation to bring material facts to the attention of the Court, even, and indeed, particularly when they are adverse.  ST Shipping and Transp., Inc. v. Golden Fleece Mar. Inc., No. 07 Civ. 11147, 2008 WL 4178189, at *7 (S.D.N.Y. Sept. 9, 2008); Great Eastern Shipping Co. Ltd. v. Phoenix Shipping Corp., No. 07 Civ. 8373, 2007 WL 4258238, at *2 (S.D.N.Y. Dec. 4, 2007).

Because Transfield may obtain in personam jurisdiction over STX in Korea, STX's motion to vacate is **granted**.

### C.

Vacatur of the attachment is also supported by principles of international comity.  Although comity is a matter of discretion rather than of "imperative or obligation," Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB, 773 F.2d 452, 457 (2d Cir. 1985) (quoting Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir. 1971)); see also Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc., 466

10

F.3d 88, 92 (2d Cir. 2006), it "will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." Cunard, 773 F.2d at 457.

In Cunard, the plaintiff obtained a Rule B attachment of the defendant's assets approximately one month after the defendant commenced a bankruptcy proceeding in Sweden. Id. at 454. The court vacated the attachment to grant comity to the decision of the Swedish court staying creditor actions during the Swedish bankruptcy proceeding. Id. Notwithstanding that Cunard, unlike this case, dealt with a foreign bankruptcy proceeding, the rationale from that case is applicable here. In this case, the Korean Attachment Order, issued one month before the Transfield sought the Rule B attachment, prohibited STX from transferring money to Transfield to satisfy the alleged debt. Permitting the Rule B attachment to stand would run afoul of principles of international comity by enabling an end-run around the Korean court's explicit proscription on STX from paying its debt to Transfield. It would leave STX at risk of being required to pay the same funds to Hanjin or to hold those funds in Korea pending the outcome of the Korean action. The tripartite dispute over the very same funds should be resolved in Korea, where the court first ruled on the disposition of

11

those funds, at least to the extent that the court ruled that those funds should not be paid to Transfield.

Therefore, vacatur should also be granted on the ground of international comity.

**IV.**

STX also seeks an award of damages to reimburse it for attorneys' fees and costs incurred in bringing this motion to vacate. Transfield does not address this request in its opposition.

"Generally, attorneys' fees awards in admiralty suits are discretionary and based on a finding of bad faith." New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 130 (2d Cir. 2001). To show bad faith, the party seeking attorneys' fees and costs must put forth "clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . ." Dow Chem. Pac., Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 344 (2d Cir. 1986) (internal quotations and citation omitted) (alteration in original). Under the bad faith standard, a finding of both meritlessness and improper motive is necessary. Dolco Inv., Ltd. v. Moonriver Dev., Ltd., 526 F. Supp. 2d 451, 453 (S.D.N.Y. 2007). While the Court has already noted that Transfield's failure to bring the existence of the Korean Attachment Order to the Court's attention at the time it

sought and obtained the attachments is a matter of concern, Transfield did have at least a valid prima facie claim, and it could not be said that its application for an attachment was completely lacking in merit. Because the Court does not find clear evidence that Transfield's claim was entirely meritless, the application for attorneys' fees and costs is **denied**.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed they are either moot or without merit. Therefore, the defendant's motion to vacate the attachment is **granted**. Because the Amended Verified Complaint sought only an attachment in aid of a London arbitration, and the plaintiff has failed to sustain its claim to an attachment, the Amended Verified Complaint is **dismissed without prejudice**, and the Clerk is directed to close this case.

SO ORDERED.

Dated: New York, New York
       March 16, 2009

/s/ John G. Koeltl
John G. Koeltl
United States District Judge